IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint | No. 86777-6-I |
| of | DIVISION ONE |
| STEPHEN P. DOWDNEY JR., | |
| Petitioner. | PUBLISHED OPINION |

SMITH, J. — In 2024, the Department of Corrections (DOC) put Stephen Dowdney Jr. on "Assigned to Cell" (ATC) status for "Failure to Program," which meant Dowdney had to remain in his cell between 8:00 a.m. and 4:30 p.m., Monday through Friday. Dowdney unsuccessfully challenged his ATC status. In May 2024, Dowdney initiated this personal restraint petition (PRP), claiming ATC status as programming was unlawful. Dowdney was released from prison in July 2025.

DOC contends Dowdney's petition is moot, because Dowdney is no longer confined and DOC voluntarily stopped using ATC status as programming. While the issue is moot as to Dowdney, it is of continuing and substantial public interest. "Assigned to Cell" status is not supported by prison policy or applicable law; therefore, we grant Dowdney's PRP and find DOC's practice of assigning inmates to their cells as programming unlawful.

FACTS

Background

In 2016, following a bench trial, the court found Stephen Dowdney Jr. guilty of robbery in the first degree and sentenced him to 156 months of confinement and 18 months of community custody.

On February 20, 2024, Dowdney received two infractions under infraction group number (IGN) 36, for being out of bounds and refusing a direct order. Following a disciplinary hearing on February 27, 2024, DOC imposed the following sanctions: (1) 15 days of confinement to quarters (CTQ), (2) 20 days loss of dayroom privileges to be served once CTQ is complete, and (3) three months' loss of monthly packages. Dowdney appealed, challenging the sufficiency of the due process he received at the hearing. Robert Jackson, the interim superintendent of the Washington State Penitentiary (WSP), reviewed the hearing audio and vacated the guilty findings and sanctions and remanded the IGN 36 infractions for a new hearing.[1]

Around the same time that he was infracted under IGN 36, Dowdney lost his job as a porter at the prison. On February 15, 2024, Dowdney received a form from DOC entitled "Assigned to Cell for Failure to Program." The form notified Dowdney that he was being placed on "Assigned to Cell" (ATC) status because of his program review. The notice stated, "You are to remain in your cell Monday through Friday from 8:00 A.M. to 4:30 P.M. . . . If you violate [ATC]

_____

[1] The record is not clear when Dowdney's infractions were vacated or when he received a new hearing.

Status, you will be subject to disciplinary action. You will remain on [ATC] Status until assigned to another program." The form provided that ATC status could be appealed.

Dowdney submitted a kite,[2] alleging he had been placed on cell confinement and did not have "a hearing, notice of rights, or exercised any rights." The response from DOC informed Dowdney he had been assigned to his cell "as [his] current program through a Program Review decision." The response also noted the "decision fits within the written Jobs Process" and "once you [Dowdney] are assigned to another program, your ATC will end."

On March 26, 2024—a few weeks after Dowdney's IGN 36 disciplinary hearing, but before the sanctions were lifted—a DOC employee discovered Dowdney had been in the dayroom during his ATC hours. The employee infracted Dowdney for "refusing to participate in an available work, training, education or other mandatory programming assignment." In the infraction report, the employee noted they had "checked [Dowdney's] programming status to verify he was still on [ATC] as during his last Program Review he was [ATC] as his program," and confirmed "there was no mandatory reason to be in the dayroom where the kiosk is located." Dowdney challenged the infraction. The hearing officer found Dowdney guilty of the infraction and imposed sanctions, including loss of good conduct time, which would have delayed Dowdney's release.

---

[2] A "kite" is "[a] form for official handwritten correspondence from incarcerated individuals to employees." *Definitions*, WASH. DEP'T OF CORR., https://doc.wa.gov/news/resources/definitions [https://perma.cc/Q5AG-MDGP].

In May 2024, Dowdney initiated a personal restraint petition, seeking to vacate the infractions, restore good conduct and earned time, and declare the "Assigned to Cell" program unlawful.[3]  In its response, DOC provided a declaration from Jackson, who noted he expunged IGN 41 from Dowdney's record and lifted the imposed sanctions.  Jackson asserted the infraction was a "misunderstanding of the facts," and the employee who infracted Dowdney "erroneously identified the infraction as 'failing to program' instead of 'violating a sanction' " under IGN 36.  Jackson also noted DOC had discontinued its policy of administratively assigning inmates to their cells for failure to program and, therefore, the issue was moot.[4]

Dowdney was released from prison in July 2025.  In November 2025, Dowdney filed a supplemental brief, reasserting his claims that the prison was not authorized by statute to implement ATC status as programming.  Dowdney also contends the issue is not moot, but even if it is, it should still be considered because it is an issue of continuing and substantial public interest.

---

[3]  Dowdney also alleged the IGN 36 hearing violated his due process rights and the use of IGNs generally is prejudicial.  This court dismissed those claims but allowed Dowdney's challenge to IGN 41 to proceed.

[4]  In an e-mail from Jackson to various DOC officials on July 30, 2024, Jackson stated, "[I]t has been decided that we can no longer use ATC as an assignment as it is not supported in policy."  In another e-mail, on August 6, 2024, Jackson wrote, "ATC is not supported in policy unfortunately, if we ATC, we would have to pay the individual to stay in their cell as a 'program.'  I am not willing to pay someone to stay in their cell and do nothing as a repercussion of doing nothing."

4

ANALYSIS

Standard of Review

Under RAP 16.4(a), this court "will grant appropriate relief to a petitioner if the petitioner is under a 'restraint' . . . and the petitioner's restraint is unlawful.' " A petitioner is unlawfully restrained when they have limited freedom because of a court decision and "when the conditions or manner of the restraint are 'in violation of the Constitution of the United States or the Constitution or laws of the State of Washington.' " *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 352, 496 P.3d 289 (2021) (quoting RAP 16.4(c)(6)).

Mootness

Generally, this court will not review a petition when the issue is moot. *In re Det. of M.K.*, 168 Wn. App. 621, 625, 279 P.3d 897 (2012). "An issue is moot if it is not possible for this court to provide effective relief." *State v. Deskins*, 180 Wn.2d 68, 80, 322 P.3d 780 (2014).

Here, Dowdney is no longer confined, and it is not possible for the court to grant him relief. Dowdney contends the issue is not moot because voluntary cessation "does not deprive a tribunal of the power to hear and determine the case; *i.e.*, it does not render the case moot." But an issue is moot if the court cannot grant the petitioner relief and, here, even if DOC continued the alleged illegal policy, Dowdney is no longer under restraint and would not be subject to the policy.[5]

---

[5] Dowdney raises the possibility that, because he is on community custody, he could return to prison. But the mere possibility that Dowdney could be subject to the policy again is not enough to overcome mootness.

Continuing and Substantial Public Interest

Dowdney maintains that, even if the issue is moot, we should still accept review because it is an issue of continuing and substantial public interest. DOC concedes issues related to the treatment of inmates are of a public nature, but maintains an authoritative determination is not necessary and the issue is not likely to recur. We agree with Dowdney and accept review.

Even when a petition is moot, this court may accept review if the petition presents an issue of continuing and substantial public interest. *In re Pers. Restraint of Canter*, 35 Wn. App. 2d 798, 811, 579 P.3d 1106 (2025). To determine whether an issue is of continuing and substantial public interest, three factors are considered by the court: " '(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.' " *In re Pers. Restraint of M.T.M.L.*, 35 Wn. App. 2d 868, 878, 580 P.3d 464 (2025) (internal quotation marks omitted) (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004)).

Generally, voluntary cessation of conduct does not persuade a court that an issue is not likely to recur. *Fam. of Butts v. Constantine*, 198 Wn. 2d 27, 41, 491 P.3d 132 (2021). If this were the case, " 'a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.' " *Butts*, 198 Wn.2d at 41 (quoting record). But, where a defendant has abandoned the unlawful conduct, made no effort to defend its legitimacy, and expressly

6

stated it has no intention of re-adopting the unlawful conduct, the court may consider the issue unlikely to recur. *Butts*, 198 Wn.2d at 41-42. The defendant " 'bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' " *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). When the defendant did not cease the challenged behavior until after a suit was brought, the defendant has a heavier burden to prove abandonment of the wrongful actions. *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 312, 553 P.2d 423 (1976).

### 1. Public or Private Nature

Dowdney presents an issue of continuing and substantial interest. DOC acknowledges this is a public issue and Washingtonians have an interest in ensuring inmates are not mistreated.

### 2. Authoritative Determination

While DOC has discontinued the challenged policy, without an authoritative determination, a new superintendent may view the ATC policy differently from the current superintendent and decide to reinstate it. DOC does not acknowledge the unlawfulness of assigning inmates to their cells as

7

programming, and without an admission of unlawfulness, or a determination stating as much, there is no assurance that the policy will not be reinstated.[6]

### 3. Likely to Recur

DOC does not meet its burden of showing the issue is not likely to recur. DOC maintains the issue is not likely to recur because the prison has discontinued the ATC policy and has no plans of readopting it. DOC cites to *Butts* to support this contention, but in *Butts*, the defendant made no effort to defend the legitimacy of the policy. 198 Wn.2d at 41-42. Here, DOC never acknowledged the unlawfulness of ATC status as programming. DOC ceased administering ATC as programming, but despite saying ATC was not supported by policy, Jackson noted this was "unfortunate[]" and he was not "willing to pay someone to stay in their cell and do nothing as a repercussion of doing nothing."

Also, DOC only discontinued the ATC program after Dowdney submitted his PRP. Had Dowdney not commenced this action, there is no reason to believe that DOC would not still be implementing the policy. Other than Jackson's declaration stating the ATC program "has not been reinstated and there are no plans to do so in the future," no assurance exists that DOC will not go back to implementing a similar policy if it can avoid paying inmates. Without any admission of unlawfulness, we cannot reasonably conclude that the conduct is unlikely to recur.

---

[6] Rather than address whether ATC was proper programming, the primary assertions in DOC's responsive brief were that Dowdney was no longer restrained and that he was not infracted for failing to work or program, he was infracted for being out of bounds and refusing to obey an order.

Because the ATC policy is public in nature, would benefit from an authoritative decision, and is likely to recur, it is of continuing and substantial public interest and we accept review.

Assigned to Cell Status

Dowdney contends DOC unlawfully used ATC status as programming. We agree.

Whether DOC complied with applicable policies when it administratively assigned Dowdney to his cell and allegedly infracted him for violating programming is a question of law that we review de novo. *In re Pers. Restraint of Erickson*, 146 Wn. App. 576, 585, 191 P.3d 917 (2008). A prison's actions, including how it administers work or educational programs, must be supported by valid statute, rule, or regulation. *State v. Brown*, 142 Wn.2d 57, 62, 11 P.3d 818 (2000). The Washington Legislature "intends that all incarcerated individuals be required to participate in department-approved education programs, work programs, or both." RCW 72.09.460(2).

In accordance with RCW 72.09.460, DOC adopted a work program for their facilities. The program's operational memorandum states, "All incarcerated individuals are expected to participate in authorized work, education, and/or other programs ordered by the sentencing court/paroling authority or required by statute. Failure to participate in programs may result in administrative action."

After Dowdney lost his job, DOC issued him an "Assigned to Cell for Failure to Program" notification, which required him to remain in his cell Monday through Friday from 8:00 a.m. to 4:30 p.m. Dowdney alleges that it was unlawful

9

for the prison to administratively assign him to his cell as "programming," and, similarly, to infract him for refusing to participate in a cell assignment program. DOC contends staff erroneously infracted Dowdney for failure to program, when the infraction should have been for violating his IGN 36 sanctions.[7] But whether Dowdney was infracted for failure to program or for violating his IGN 36 sanctions, the act of administratively assigning Dowdney to his cell as programming was unlawful. James Key, WSP's deputy assistant secretary, noted the administrative action of assigning an inmate to their cell "is [for] a serious infraction," not programming. When a serious infraction occurs, a disciplinary hearing is required before a sanction can be imposed. Accordingly, inmates, including Dowdney, cannot be assigned to their cells as programming, and if they are put on ATC status as part of an administrative action, a disciplinary hearing is required.

DOC unlawfully used ATC as programming. Accordingly, we grant Dowdney's PRP and find DOC's actions unlawful.

WE CONCUR:

---

[7] In addition to the infraction indicating failure to program, DOC repeatedly referred to ATC as programming, including in multiple responses to Dowdney's kites.

10